IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:18-cr-00072-DCN |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM DECISION AND** |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| JAMES C. GOODWIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. INTRODUCTION

Pending before the Court is Defendant James C. Goodwin's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 72. The Government has filed an opposition to Goodwin's Motion. Dkt. 77. Goodwin filed a reply and a declaration. Dkt. 79. Goodwin has additionally filed multiple addendums to his Compassionate Release with numerous supporting letters to his motion. Dkts. 75, 76, 78, 80. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

On September 30, 2019, the Court sentenced Goodwin to 120 months of incarceration for one count of possession of sexually explicit images of a minor, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2), to be followed by a life term of supervised release. Dkt. 51, at 1–3. Goodwin is currently incarcerated at the Federal Correctional Institution in Englewood, Colorado ("FCI Englewood"). Dkt. 77, at 2.

On February 8, 2021, Goodwin submitted a request for Compassionate Release to the Warden of FCI Englewood which was denied. Dkt. 77, at 2, Exhibit D. He cited three underlying issues that may affect his health if infected with COVID-19: chronic kidney disease, hyperlipidemia, and not having a COVID-19 vaccination. Dkt. 72, at 9. The Government, after reviewing Goodwin's medical records, states only a BMI slightly higher than 25 and high cholesterol currently afflict Goodwin. Dkt. 77, at 2–3. Additionally, Goodwin cites the ailing health of his father, Clifford Goodwin, as a key reason for his release. Dkt. 72, at 2–9. In addition to a letter of support attached to his Motion, Goodwin filed two addendums which also contain letters from family members supporting his request. Dkts. 72-1, at 2, 75, 76. The government has opposed Goodwin's Motion, stating, in part, that not only has Goodwin already contracted (and recovered from) COVID-19, but he was vaccinated by July 12, 2021, with the Johnson & Johnson vaccine.[1] Dkt. 77, at 10, Exhibit 2. Goodwin replied to the Government's opposition and filed an addendum to the Reply with more letters supporting his release from his family members. Dkts. 79; 78.

---

[1] Goodwin concedes he was vaccinated on July 12, 2021. Dkt. 79, at 10.

The Court has reviewed all of Goodwin's submissions.

In Goodwin's Reply, he argues the Government's response does not address the caretaker request but only his arguments surrounding the COVID-19 risk associated with his health conditions. Dkt. 79, at 1–14.

### III. LEGAL STANDARD

Goodwin seeks compassionate release under the First Step Act's ("FSA") newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[2] Dkt. 79, at 2–3. For a court to consider granting a compassionate release, the district court must, as a threshold matter, determine whether a defendant has exhausted their administrative remedies. *Id.* Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[3] *Id.* If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id.*; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

---

[2] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[3] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A); *United States v. Drummondo-Farias*, 460 F. Supp. 3d 1008, 1011 (D. Haw. 2020). Indeed, many courts have proceeded to decide compassionate relief motions where the thirty-day period had lapsed even while a motion was still pending before the BOP. *See, e.g.*, *Drummondo-Farias*, 460 F. Supp. 3d at 1013; *United States v. Johnson*, 2020 WL 2307306, at *4 (E.D. Cal. May 8, 2020) ("The court need not resolve any question of statutory construction here, because as of the date of this order, 30 days have passed since the date defendant administratively filed his reduction in sentence request. . . . [T]he court assumes defendant has exhausted without reaching the question of how to interpret the statutory text of § 3582(c)(1), and proceeds to consider the merits of the motion below."); *United States v. Hinz*, 2020 WL 2319924, at *1 (E.D. Cal. May 11, 2020) ("As of the date of this Order, 30 days have passed since Defendant filed his request. Therefore, Defendant has now met the exhaustion requirement."); *United States v. Simpson*, 2020 WL 2323055, at *2 (N.D. Cal. May 11, 2020) (granting the compassionate release motion after the 30-day exhaustion period lapses).

Goodwin submitted a request for Compassionate Release with FCI Englewood which was denied. Dkts. 72; at 1–2; 77, at 2, Exhibit D. Because Goodwin's request was

denied by the Warden at Englewood and more than thirty days have passed since the denial

was filed, the Court finds Goodwin has exhausted his administrative remedies in

accordance with § 3582(c)(1)(A).[4] *Id.*

### B. Extraordinary and Compelling Reasons

Having determined that Goodwin exhausted his administrative remedies, the Court

must next consider whether "extraordinary and compelling reasons" warrant a permanent

reduction in Goodwin's sentence, and whether "such reduction is consistent with

applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §

3582(c)(1)(A)(i). Goodwin bears the burden of establishing that compelling and

extraordinary reasons exist to justify compassionate release. *Drummondo-Farias*, 460 F.

Supp. 3d at 1013–15; *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6,

2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and

compelling reasons" to four scenarios: (A) the medical condition of the defendant, (B) the

defendant's age, (C) certain family circumstances, and (D) as determined by the Director

of the BOP, other extraordinary and compelling reasons that exist either separately or in

combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note

1.

However, the Sentencing Commission "never harmonized its policy statements with

the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp.

---

[4] Both parties concede that the statutory 30-day response period has passed with an official denial being filed on Goodwin's administrative motion. Dkts. 72, at 1–2, 17; 77, at 2.

3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). Because this is no longer the law with the FSA, which allows defendants to seek relief directly from the court, this "leaves district courts in a conundrum." *Id.* (explaining that Congress now allows district courts to grant petitions "consistent with the applicable policy statements" from the Sentencing Commission, although the Sentencing Commission "has not made the policy statements for the old regime applicable to the new one").

A growing number of district courts have concluded that, in the absence of applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G. § 1B1.13] warrant compassionate release." *Rodriguez*, 411 F. Supp. 3d at 682 (collecting cases). However, other courts have concluded "a judge may not stray beyond the specific instances listed in [U.S.S.G. § 1B1.13]." *United States v. Mondaca*, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (citations omitted); *see also United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (stating U.S.S.G. § 1B1.13's descriptions of extraordinary and compelling reasons "remain current, even if references to the identity of the moving party are not").

The Court need not decide the issue, however, because Goodwin suggests the "medical condition" scenario described in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.4 applies to his case. Specifically, Goodwin points towards his pre-existing health

issues, in conjunction with the COVID-19 pandemic, in general as reason for his release.[5]

He further advocates that his ill father is a sufficient reason for his release.[6]

At the outset, the Court notes that concern for the possibility of exposure to COVID-19 on its own does not meet extraordinary and compelling criteria. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). While Goodwin has contracted COVID-19, even considering his pre-existing health conditions, his risk of serious illness or death from COVID-19 is relatively low because of the efforts of the BOP and its action plan.[7] Dkt. 77,

---

[5] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

    (A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

[6] While Goodwin's intention to care for his ailing father is admirable, it does not fall within the scope of either prong under U.S.S.G. § 1B1.13, Application Note 1(C). Indeed, courts have consistently denied relief in similar circumstances. *See United States v. Goldberg*, Criminal Action No. 12-180 (BAH), 2020 U.S. Dist. LEXIS 63885, 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) ("While certainly admirable, a desire to help care for one's elderly parents does not qualify as an 'extraordinary and compelling reason' for release under U.S.S.G. § 1B1.13, nor, therefore, under 18 U.S.C. § 3582(c)(1)(A)(i)."); *United States v. Ingram*, No. 2:14-cr-40, 2019 U.S. Dist. LEXIS 118304, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (need to care for 93-year old mother in hospice was not an extraordinary and compelling reason for compassionate release as "many, if not all inmates, have aging and sick parents").

[7] *Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 12,

at 17. Indeed, it was because of the BOP's action plan that Goodwin was fully vaccinated on July 12, 2021.[8] Dkts. 77, at 10, 17, Exhibit 2; 79, at 10; *United States v. Kim*, 2021 U.S. Dist. LEXIS 86830, at *6-7 (D. Haw. May 6, 2021) (denying the defendant's motion because he was fully vaccinated, and there were no active COVID-19 cases at the facility where he was located); *United States v. Stewart*, 2021 U.S. Dist. LEXIS 99588, at *7 n.3 (D.N.J. May 25, 2021) (denying defendant's compassionate release motion because the defendant had begun the vaccination process). Additionally, Goodwin's pre-existing health conditions appear to be fully under control. Dkts. 77, at Exhibit 1. Therefore, Goodwin has not met any of the prongs available under U.S.S.G. § 1B1.13, Application Note 1(A) or (C).[9]

Additionally, there is no evidence to suggest that Goodwin would be at less risk to contract the virus if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining in prison. *See United States v. Singui*,

---

2021). The CDC recommends people with chronic kidney disease receive the COVID-19 vaccine in order to reduce the chances of contracting the disease. *Chronic Kidney Disease*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html/#Actions (last visited Aug. 12, 2021).

[8] At this time, FCI Englewood—where Goodwin is currently incarcerated—has fully vaccinated 134 staff and 687 of the total population of 939 inmates, and there is only one active COVID-19 cases in the inmate population. Dkt. 77, at 4–5; *COVID-19 Vaccine Implementation*, FEDERAL BUREAU OF PRISONS, [hereinafter FEDERAL BUREAU OF PRISONS VACCINE], https://www.bop.gov/coronavirus/ (last visited Aug. 14, 2021); Federal Bureau of Prisons, COVID-19 Vaccine Guidance (2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. Furthermore, "[t]he possible availability of the vaccine in the near future is therefore not something that this [sic] court can ignore in ruling on [defendant's] compassionate release request." *United States v. Kaneshiro*, 2021 U.S. Dist. LEXIS 55610, at *7 (D. Haw. Mar. 24, 2021).

[9] U.S.S.G. § 1B1.13, Application Note 1(A), (C); *supra* note 5; *supra* note 6.

MEMORANDUM DECISION AND ORDER - 8

2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections").

Currently, FCI Englewood—where Goodwin is incarcerated—has one confirmed active case of COVID-19 among the 939 inmates.[10] Dkts. 77, at 4, 5.

Only 383 of the total 130,844 federal inmates within the 122 separate BOP-managed institutions are currently testing positive for COVID-19.[11] Additionally, BOP has administered 210,636 doses of the COVID-19 vaccine to inmates and staff.[12] Conversely, Clark County, the condensed area where Goodwin would reside if released, has reported 530 new cases of COVID-19 in the last two weeks alone.[13] Considering the low level of

---

[10] FEDERAL BUREAU OF PRISONS VACCINE, *supra* note 8; *United States v. Kim*, 2021 U.S. Dist. LEXIS 86830, at *67.

[11] FEDERAL BUREAU OF PRISONS VACCINE, *supra* note 8.

[12] FEDERAL BUREAU OF PRISONS VACCINE, *supra* note 8.

[13] *DPH Idaho COVID-19 Dashboard*, IDAHO DIVISION OF PUBLIC HEALTH, https://public.tableau.com/app/profile/idaho.division.of.public.health/viz/DPHIdahoCOVID-19Dashboard/Home (last visited Aug. 14, 2021).

COVID cases across the entirety of BOP institutions and the one case at FIC Englewood,

the Court cannot find that Goodwin would be at less risk if released into the community.

Finally, the Government asserts there are compelling reasons not to release

Goodwin at this time. The Government argues that the 18 U.S.C. § 3553(a) factors weigh

against Goodwin's release.[14] In particular, the Government asserts that Goodwin would

still pose a danger to public safety if released. Dkt. 77, at 2, 10–21. Goodwin has served

only 45 months of his 120-month sentence. Dkt. 77, at 20. Furthermore, the Government

argues that Goodwin's crime of possession of child pornography while on supervised

release, a prior conviction for possession of child pornography, his possession of

prepubescent child pornography, and his prior history of criminal conduct while on

supervised release are sufficient to deny this motion. Dkts. 42, at 1–19; 77, at 19–20. The

Government's arguments here are persuasive, but the Court need not determine if they

alone would have been sufficient to deny the present motion given the lack of extraordinary

---

[14] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

  (2) the need for the sentence imposed—

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

MEMORANDUM DECISION AND ORDER - 10

and compelling reasons.[15]

      In sum, the Court finds that Goodwin has not met his burden to show that "extraordinary and compelling reasons" exist warranting his release. Accordingly, the Court must DENY Goodwin's Motion. 18 U.S.C. § 3582(C)(1)(A).

## V. ORDER

The Court HEREBY ORDERS:

1.  Goodwin's Motion for Compassionate Release (Dkt. 71) is **DENIED**.

DATED: August 24, 2021

David C. Nye
Chief U.S. District Court Judge

---

[15] The Court notes the Government has failed to address Goodwin's arguments surrounding caregiving of his father as noted in his motion and reply. Dkts. 71; 79. In fact, the Government only addresses Goodwin's prior criminal history and the health claims arising from COVID-19. Nevertheless, as the Court noted (*see supra* note 6) caring for an ailing or aged parent does not justify a compassionate release.

MEMORANDUM DECISION AND ORDER - 11