IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 4:18-cr-00072-DCN |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION AND** |
| vs. | ) | **ORDER** |
| | ) | |
| JAMES C. GOODWIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. INTRODUCTION

The Ninth Circuit Court of Appeals recently remanded this matter so that the Court could "reconsider" Defendant James C. Goodwin's Motion for Compassionate Release in light of relevant caselaw. Dkt. 91.

Having reviewed anew the record and briefs in this case—specifically in light of the caselaw the Ninth Circuit mentioned—the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court again finds good cause to DENY Goodwin's Motion.

## II. BACKGROUND

On September 30, 2019, the Court sentenced Goodwin to 120 months of incarceration for one count of possession of sexually explicit images of a minor, in

violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2), to be followed by a life term of supervised release. Dkt. 51, at 1–3. Goodwin is currently incarcerated at the Federal Correctional Institution in Englewood, Colorado ("FCI Englewood"). Dkt. 77, at 2. His anticipated release date is April 22, 2026. *Id.*

On February 8, 2021, Goodwin submitted a request for Compassionate Release to the Warden of FCI Englewood which was denied. Dkt. 72-1, at 21. Thus, Defendant moved for Compassionate Release to be considered by the district court under the First Step Act's ("FSA") amended 18 U.S.C. § 3582(c)(1)(A)[1]. Goodwin initially argued that he should be released due to the deteriorating condition of his father, stating that he is the best available care-giver as his other family members work full-time and live several miles away. Dkt. 72, at 4–9. He also argued that his pre-existing health issues put him at an increased risk of serious illness from a potential COVID-19 infection. Dkt. 72, at 9. After considering the motion under the FSA, using the guidelines issued by the U.S. Sentencing Commission under U.S.S.G. § 1B1.13 to the extent they were applicable, and reviewing the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court denied Goodwin's Motion for Compassionate Release on August 24, 2021. Dkt. 82.

Goodwin subsequently appealed to the Ninth Circuit Court of Appeals. Dkt. 85. He argued, in part, that in light of the Ninth Circuit's intervening decision in *United States v.*

---

[1] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

MEMORANDUM DECISION AND ORDER - 2

*Aruda*, this Court erred in the denial of his motion for compassionate release.[2] Dkt. 85, at 3. The Government subsequently filed a motion to vacate and remand in concession of *Aruda*. Dkt. 91. The Ninth Circuit then vacated this Court's decision and remanded for reconsideration of Defendant's motion for compassionate release in light of the intervening *Aruda* decision. Ninth Circuit Case No. 21-30202, Dkt. 13.

### III. DISCUSSION

As instructed by the Ninth Circuit, the Court must reconsider Goodwin's Motion for Compassionate Release against the backdrop of *Aruda*.

While *Aruda* held that courts are not bound by the Sentencing Commission's statements, it also held that courts may still allow the statements to "inform a district court's discretion." *Aruda*, 993 F.3d at 802; *see also United States v. Ruvalcaba,* 26 F.4th 14, 16 (1st Cir. 2022) (similarly holding that district courts are "not bound by the Sentencing Commission's current policy statement[,]" but that "the absence of applicable policy statement does not 'creat[e] a sort of Wild West in court, with every district judge having an idiosyncratic release policy'" because "the district court's discretion remains circumscribed by statutory standards.") (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

Therefore, while the Sentencing Commission's application notes in regard to U.S.S.G. § 1B1.13 may not be binding, they are still persuasive and can be used to

---

[2] 993 F.3d 797, 801 (9th Cir. 2021). As explained below, *Aruda* held that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id*.

MEMORANDUM DECISION AND ORDER - 3

inform and guide the Court, as they were in this decision. Upon reexamination of the Court's order denying Goodwin's Motion for Compassionate Release (Dkt. 72), the Court finds no glaringly obvious defect in its analysis in the wake of *Aruda* (including its application of U.S.S.G. § 1B1.13) that would justify a reversal of its prior decision. The Court denied Goodwin's motion because he failed to show "extraordinary and compelling reasons" to prompt an early release. Nevertheless, the Court will reevaluate its prior decision on Goodwin's Motion for Compassionate Release—in light of *Aruda* and explicitly recognizing that the Sentencing Commission's application notes regarding U.S.S.G. § 1B1.13 are not binding.

### A. Motion for Compassionate Release

In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.³ *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

---

³ Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.")). As this Court has acknowledged (see *supra* note 2), these policy statements are no longer binding in the wake of *Aruda*.

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). As the Court has recognized, this assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—has been answered in the negative by *Aruda* and most other circuit courts (including the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Tenth Circuits).[4]

---

[4] *See, e.g., Ruvalcaba,* 26 F.4th at 16; *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021); *United States v. Long*, 997 F.3d 342, 358 (D.C. Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392-93 (5th Cir. 2021); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020).

First, the Court must determine if Goodwin exhausted his administrative remedies. It remains true in this case that under 18 U.S.C. § 3582(c)(1)(A), Goodwin "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf." Dkt. 72-1, at 21.. Thus, his motion was ripe for review.

Second, the Court will address Goodwin's request for compassionate release based on his family circumstances. Goodwin argues that the "family circumstances" scenario described in subdivision (C) of U.S.S.G. § 1B1.13, Application Note 1 applies to his case. Therefore, because Goodwin explicitly implicated a scenario set forth by the Sentencing Commission, the Court will use § 1B1.13 as guidance.[5] While the desire to care for one's aging or ill parent is admirable, it does not, in and of itself, constitute an "extraordinary and compelling" reason for release. Goodwin argues that his father's physical condition is deteriorating and that upon release, he would act as a live-in caretaker. Dkt. 72, at 8. Many courts have considered compassionate release for the reason of caring for a parent or grandparent, but have found such circumstances do not amount to "extraordinary and compelling" reasons. *See United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 15, 2019) (finding that "[m]any, if not all inmates, have aging and sick parents," and as such it is not a compelling reason for release.); *see also United States v. Pepper*, 851 Fed. Appx 890, 91 (10th Cir. 2021) (denying compassionate release due to defendant's aging parent on appeal, despite the fact that defendant's sister was the only alternative

---

[5] Family circumstances that would amount to extraordinary and compelling reasons for early release are listed in the FSA as "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, cmt. n.1(C).

MEMORANDUM DECISION AND ORDER - 6

familial caregiver and had recently moved to another state). Here, Goodwin's brother lives close to their father and is currently helping to take care of the elder Goodwin. Dkt. 72-1, at 2. While the Defendant's brother is unable to provide personal full-time care for their father, that fact remains true of many families with aging parents, whether prison is a factor in their lives or not. Therefore, this Court concurs that the desire to care for an aging parent—while commendable—is not "extraordinary and compelling" beyond the facts of what many prisoners and their families face so as to warrant early release.

Third, the Court will address Goodwin's motion based on medical circumstances. Goodwin argues that the "medical condition" scenario described in subdivision (A) of U.S.S.G. § 1B1.13, Application Note 1.4 applies to his case. Again, because Goodwin explicitly implicated a scenario set forth by the Sentencing Commission, the Court will use § 1B1.13 as guidance. Specifically, Goodwin points towards his pre-existing health issues, in conjunction with the COVID-19 pandemic, as reason for his release.[6] As the Court noted

---

[6] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

    (A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the

MEMORANDUM DECISION AND ORDER - 7

in its previous decision (Dkt. 82), concern for the possibility of exposure to COVID-19 on its own does not meet extraordinary and compelling criteria. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Goodwin has been fully vaccinated as of July 12, 2021. Dkts. 77, at 10; 79 at 10. Additionally, his medical conditions (chronic kidney disease, stage II—mild, and hyperlipidemia) appear to be well managed by BOP healthcare. *See generally* Dkt. 77-1. Moreover, while the rate of COVID-19 infection within a community is not static, there is little evidence that Goodwin would be better protected outside of prison. Indeed, as of May 27, 2022, FCI Englewood is reporting zero COVID-19 infections among 988 inmates, and only one infection among staff.[7] Additionally, BOP has administered 318,064 doses of the COVID-19 vaccine to inmates and staff.[8] Therefore, the Court cannot find there is an extraordinary and compelling reason for release under the FSA for Goodwin's medical conditions or that he would be *more* safe outside the correctional setting.

Finally, the Government asserts there are compelling reasons not to release Goodwin at this time and that the 18 U.S.C. § 3553(a) factors weigh against Goodwin's release.[9] This Court agrees. In particular, the Government asserts that Goodwin would still

---

environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

[7] Federal Bureau of Prisons, COVID-19 https://www.bop.gov/coronavirus/ Information, available at (last accessed May 27, 2022).

[8] FEDERAL BUREAU OF PRISONS VACCINE, *supra* note 7.

[9] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

pose a danger to public safety if released. Dkt. 77, at 2, 10–21. Goodwin has served roughly 56 months of his 120-month sentence. Dkt. 77, at 20. Furthermore, the Government argues that Goodwin's crime of possession of child pornography while on supervised release, a prior conviction for possession of child pornography, his possession of prepubescent child pornography, and his prior history of criminal conduct—including the possession of firearms and ammunition while on supervised release—are sufficient to deny his motion. Dkts. 42, at 1–19; 77, at 2, 19–20. The Government's arguments here are persuasive and provide a secondary reason for denying Goodwin's Motion.[10]

In sum, the Court finds that Goodwin has not met his burden to show that "extraordinary and compelling reasons" exist warranting his release. The Court utilized the application notes from U.S.S.G. § 1B1.13 *as guidance* and determined he is not entitled to relief.

Accordingly, the Court must again DENY Goodwin's Motion for Compassionate

---

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

[10] The Court notes the Government has failed to address Goodwin's arguments surrounding caregiving of his father as noted in his motion and reply. Dkts. 71; 79. In fact, the Government only addressed Goodwin's prior criminal history and the health claims arising from COVID-19. Nevertheless, as the Court noted, caring for an ailing or aged parent does not justify a compassionate release.

MEMORANDUM DECISION AND ORDER - 9

Release. 18 U.S.C. § 3582(C)(1)(A).

## IV. ORDER

The Court HEREBY ORDERS:

1. Goodwin's Motion for Compassionate Release (Dkt. 71) is **DENIED**.

DATED: June 7, 2022

_____
David C. Nye
Chief U.S. District Court Judge